KELLY V. CHRISTIANSON, BY AND THROUGH HER PARENT AND NEXT FRIEND, VIRGINIA L. CHRISTIANSON, ET AL., APPELLANTS, V. EDUCATIONAL SERVICE UNIT NO. 16 ET AL., APPELLEES.

501 N.W.2d 281

Filed June 4, 1993.    Nos. S-91-045, S-91-050 through S-91-055.

James R. Welsh, of Welsh & Sibbernsen, for appellants.

Brian D. Nolan, of Hansen, Engles & Locher, for appellees (cases Nos. S-91-045, S-91-052, S-91-054).

William T. Wright, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellees (cases Nos. S-91-050, S-91-051, S-91-053, S-91-055).

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

FAHRNBRUCH, J.

These appeals involve the dismissal of separate actions for damages filed on behalf of seven mentally handicapped individuals who allegedly suffered physical and sexual abuse while enrolled in Educational Service Unit No. 16 (E.S.U.) in North Platte, Nebraska. Three of the individuals also claimed that they were emotionally abused.

All of the claims were denied when they were filed against the State of Nebraska pursuant to the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1987), and when they were filed against E.S.U. pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991). Thereafter, a lawsuit was filed in the district court for Lincoln County on behalf of each of the mentally handicapped individuals. E.S.U., two E.S.U. administrators, and the State of Nebraska were named as defendants. The suits were consolidated for hearings on pretrial motions in the district court. The appeals to this court were consolidated for argument and disposition.

In October 1989, following a hearing, the district court sustained a demurrer filed in each case by the State of Nebraska which alleged, inter alia, that the court had no jurisdiction over the subject matter of the action as to the State of Nebraska, since E.S.U. "is not a state agency."

Subsequently, upon the defendants' motions, the trial court ordered the plaintiffs to make their petitions more definite and certain. When the plaintiffs refused to do so, again upon the defendants' motions, the district court struck each plaintiff's petition in its entirety. Thereafter, the court dismissed each of the plaintiffs' petitions without prejudice.

We affirm the district court's dismissal order in each of the cases.

## FACTS

Each of the mentally handicapped individuals, hereinafter referred to singularly as plaintiff or collectively as plaintiffs, at various times between 1973 and 1988 attended a School for the Trainable Mentally Handicapped operated by E.S.U. in North Platte, Nebraska. This school was operated and maintained by

E.S.U. to provide custodial and educational facilities for handicapped individuals who fell within the eligibility guidelines of the school.

There are 17 educational service units created by statute. See Neb. Rev. Stat. § 79-2201 et seq. (Reissue 1987). A number of counties are assigned to each educational service unit. Each educational service unit has an elected board with authority to levy taxes, appropriate money, and make expenditures. *Id*. Because of its composition, powers, and duties, an educational service unit falls under the Political Subdivisions Tort Claims Act. § 13-901 et seq.

On April 13, 1989, separate lawsuits were filed on behalf of the seven plaintiffs, six of whom were minors and one of whom was of legal age. Each plaintiff claimed he or she suffered physical and sexual abuse because of the negligence of each of the named defendants. As stated previously, three of the plaintiffs also claimed they were emotionally abused. Additionally, all the plaintiffs alleged the defendants violated their civil rights under 42 U.S.C. § 1983 (1988). The claimed incidents of abuse allegedly occurred as early as 1973 for some plaintiffs and as late as 1988 for other plaintiffs.

Each of the plaintiffs' petitions is separated into "Division One," "Negligence," and "Division Two," "42 U.S.C. Section 1983." In "Division Two," in addition to praying for damages, each plaintiff seeks attorney fees. The "divisions" are not two causes of actions because both divisions are based upon but one set of facts. At most, recovery was sought on two legal theories. In such a situation, under Nebraska law, a plaintiff, if successful, is entitled to but one recovery. We specifically disapprove of the form of the petitions in these cases. The pleading approach used here could result in some degree of chaos both at the trial level and in the analysis on review. See *DeSciose v. Chiles, Heider & Co.*, 239 Neb. 195, 476 N.W.2d 200 (1991).

In each of the plaintiffs' cases, the defendants moved for an order requiring each plaintiff to make his or her petition more definite and certain. Specifically, the defendants asked that each plaintiff specify the name of each person alleged to have abused the plaintiff, the dates of the alleged abuse, and how the

defendants failed to exercise ordinary care to prevent such abuse.

All plaintiffs but one resisted the defendants' motions to make more definite and certain on the basis that the matters the defendants sought to have included in the petitions were matters of evidence and not ultimate fact, and that those matters should be addressed by the Nebraska Discovery Rules. Plaintiff Harold Lutkehus II apparently did not file a resistance. The district court sustained in its entirety the defendants' motion to make Lutkehus' petition more definite and certain, and sustained in part the motions as to the remaining plaintiffs.

A series of amended pleadings was filed in each case, and the defendants continued to meet the plaintiffs' pleadings by filing motions to make more definite and certain. All plaintiffs amended their petitions at least three times, and one plaintiff amended his petition five times. At a hearing on October 15, 1990, all plaintiffs ultimately elected to stand on their pleadings. The defendants then moved to strike each plaintiff's petition. The motions were granted. Between December 5 and 11, 1990, the district court struck all of the plaintiffs' petitions in their entirety and dismissed each of the captioned matters without prejudice. Each plaintiff timely appealed to this court.

## ASSIGNMENTS OF ERROR

All the plaintiffs make identical assignments of error. The four assignments of error by each plaintiff combine to assert that the district court erred in dismissing the plaintiff's petition for failure to make the petition more definite and certain. None of the plaintiffs assigned as error the trial court's sustainment of the State of Nebraska's demurrer that alleged that the trial court lacked jurisdiction over the subject matter of the action because E.S.U. was not a state agency.

## STANDARD OF REVIEW

It is within the discretion of the district court to dismiss a petition without prejudice for disobedience by the plaintiff of a reasonable order concerning the proceedings in the action. *Vodehnal v. Grand Island Daily Independent*, 191 Neb. 836, 218 N.W.2d 220 (1974). An order of the district court requiring

a petition to be made more definite and certain will be sustained on appeal unless it clearly appears that the court abused its discretion. *Id.*

## NATURE OF CODE PLEADING

Before turning to the question of whether the district court abused its discretion by dismissing plaintiffs' petitions for failure to obey a reasonable order of the court, we first review the nature and purpose of pleading under the Nebraska statutes.

Generally, the purpose of pleading is twofold: (1) to eliminate from consideration contentions which have no legal significance and (2) to guide the parties and the court in the conduct of cases. See Jack H. Friedenthal, Mary Kay Kane & Arthur R. Miller, Civil Procedure § 5.2 (1985). This court has held that "[t]he purpose of pleadings is to frame the issues upon which a cause is to be tried and advise the adversary as to what he must meet." *Bashus v. Turner*, 218 Neb. 17, 21, 352 N.W.2d 161, 165 (1984).

Modern pleading in the United States falls into one of two general categories. Code or "fact" pleading is based on what is commonly known as the Field Code, the New York Code of Civil Practice enacted into law in that state in 1848. See Fleming James, Jr., Geoffrey C. Hazard, Jr., & John Leubsdorf, Civil Procedure § 3.5 (4th ed. 1992). Code pleading attempted to simplify the highly technical common law writ system, and by the late 1930's it had been embraced by a majority of the states. See Friedenthal, Kane & Miller, *supra*, § 5.1.

"Notice" pleading, on the other hand, was first introduced by the Federal Rules of Civil Procedure (FRCP) in 1938. Friedenthal, Kane & Miller, *supra*, § 5.1. The FRCP, which represented an entirely new approach to pleading, have since been adopted in whole or in part by a number of the states. *Id.*

Nebraska adopted a system of code pleading in 1867. See Neb. Rev. Stat. § 25-801 et seq. (Reissue 1989). In 1939, 1 year after the adoption of the FRCP, the Nebraska Legislature authorized and directed the Nebraska Supreme Court to promulgate rules of practice for the state courts. See 1939 Neb. Laws 172, ch. 30, p. 164.

Whether Nebraska should adopt rules of practice based on the federal model was hotly debated by members of the Supreme Court of Nebraska Advisory Committee on Rules of Practice. See, Charles F. Bongardt, *The Final Draft Report, Nebraska Rules of Civil Procedure, "Pro"*, 21 Neb. L. Rev. 76 (1942) (arguing in favor of adoption); Harry W. Shackelford, *Why Adopt New Rules of Pleading and Practice?*, 21 Neb. L. Rev. 94 (1942) (arguing against adoption). Ultimately, the Legislature rejected the Supreme Court's proposed FRCP-based rules. See, 1943 Neb. Laws 145, ch. 63, p. 236; Comp. Stat. § 27-231 et seq. (Supp. 1941). As a result, Nebraska has maintained a code-based system of civil procedure. See § 25-801 et seq.

There are distinctive differences between the pleading requirements of Nebraska as a code pleading state, and the requirements of federal and federal-replica state pleading. Notice pleading requires only that a party set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A litigant is not required to state a cause of action, but must simply give the opposing party sufficient notice of the claim so as to be able to prepare to meet it. Friedenthal, Kane & Miller, *supra*, § 5.7. Although a pleader in notice pleading is required to refer to circumstances and events upon which the claim is based, the pleader is not required to allege a specific fact to cover every substantive element of the claim. *Id.*

In contrast to notice pleading, Nebraska law defines pleadings as "the written statements by the parties *of the facts* constituting their respective claims and defenses." (Emphasis supplied.) § 25-801. A "petition must contain . . . *a statement of the facts constituting the cause of action*, in ordinary and concise language, and without repetition . . . ." (Emphasis supplied.) § 25-804(2). The ultimate facts to be established should be alleged in a pleading. *State ex rel. Warren v. Kleman*, 178 Neb. 564, 134 N.W.2d 254 (1965). Facts are sufficient to constitute a cause of action when they are a narrative of the events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991).

A pleading is *not* to state conclusions of law. See, e.g., *State ex rel. Warren v. Kleman, supra*; *Ripp v. Riesland*, 176 Neb. 233, 125 N.W.2d 699 (1964); *Card v. Card*, 174 Neb. 124, 116 N.W.2d 21 (1962). The pleading of legal conclusions is insufficient to raise an issue of fact. *Newman Grove Creamery Co. v. Deaver*, 208 Neb. 178, 302 N.W.2d 697 (1981). See *Mangan v. Landen*, 219 Neb. 643, 365 N.W.2d 453 (1985).

The distinctions between the two systems of pleading are not without practical implications for practicing members of the bar and their clients, as well as for the judiciary. When only notice pleading is required, reputedly, practicing lawyers often complain that they do not become fully aware of the issue in many cases until after prolonged discovery. This results in increased costs to the litigants and untoward delay in cases reaching the trial stage. Under code pleading, if the pleadings are properly prepared, the issues are apparent immediately upon the filing of a petition and the filing of an answer. If either a petition or an answer does not clearly set forth a litigant's issues, sustaining a motion to make more definite and certain will expeditiously clarify the issues, save the litigants unwarranted expense, promote judicial economy, and avoid unnecessary delay in a case reaching the trial stage.

It is with the above legislatively mandated and judicially interpreted requirements and purposes of fact pleading, as well as practical considerations, in mind that we analyze whether the district court abused its discretion in dismissing plaintiffs' petitions.

## NEGLIGENCE ACTIONS

"Division One" in each of the plaintiffs' petitions is denominated "Negligence." Summarized, each petition alleges that the defendants, individually and through their agents, departments, and employees, negligently operated and maintained the E.S.U. school for trainable mentally handicapped individuals by hiring and retaining certain individuals who were likely to physically and sexually, and in some cases emotionally, abuse the students; by failing to exercise ordinary care to protect the handicapped students from such abuse; and by failing to implement policies and procedures

to prevent, investigate, discover, report, and treat incidents of such abuse. Each petition alleges that the plaintiff was abused by "one or more" individuals. From three to six alleged abusers are named in the petitions.

Nebraska has recognized that an employer is subject to liability for physical harm to third persons resulting from the employer's negligent selection of an improper employee. See *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986).

To state a cause of action for negligence, one must plead facts from which it can be inferred that the defendant owed a legal duty to protect the plaintiff from injury, that the defendant failed to discharge that duty, and that damage proximately resulted from such failure. *Widga v. Sandell*, 236 Neb. 798, 464 N.W.2d 155 (1991). Specifically, to impose liability upon an employer for negligently selecting or entrusting work to an employee,

> a plaintiff must not only show that the employer negligently selected a person incapable of performing the work but also show that the conduct of the incompetent employee was a proximate cause of injury to another. The employee's characteristic, quality, or deficiency must proximately cause the harm producing injury to another.

*Greening v. School Dist. of Millard*, 223 Neb. at 737, 393 N.W.2d at 58.

The plaintiffs' petitions have adequately set forth facts alleging that the defendants owed a duty of due care to the plaintiffs. However, the facts alleged in the petitions are not sufficiently definite to inform the defendants in what respect they had breached their duty to the plaintiffs or how the defendants' actions were the proximate cause of any of the alleged injury or damage to the plaintiffs.

" 'If the allegations are so indefinite or uncertain that the precise meaning is not apparent, the remedy of the other party is an application to the Court to have the pleading in that particular made more definite and certain. . . .' " *Rhodes v. Crites*, 173 Neb. 501, 506, 113 N.W.2d 611, 615 (1962). Accordingly, the defendants moved that each plaintiff specify in his or her petition how the defendants allegedly failed to

exercise ordinary care, and specify the name of each person alleged to have abused the plaintiff, as well as the approximate dates the alleged acts of abuse took place.

A plaintiff's bald assertion that a defendant has failed to exercise ordinary care is insufficient to inform a defendant how such defendant has breached the defendant's duty to the plaintiff. See *Chmelka v. Continental Western Ins. Co.*, 218 Neb. 186, 352 N.W.2d 613 (1984) (stating that if a petition merely alleged that an insured driver was negligent in freeing his vehicle from a ditch, such petition would be subject to a motion to make more definite and certain).

Similarly, by failing to plead the dates on or about when the alleged incidents of abuse allegedly took place and the names of the alleged abusers with specificity, the plaintiffs have failed to advise the defendants of how the negligent retention of certain employees by the defendants proximately caused injury to the plaintiffs. Each petition alleges that the plaintiff was abused during virtually the entire period of time the plaintiff attended the E.S.U. school. These periods of time range from 15 months to 15 years.

Such vague and general pleading does not meet Nebraska's code pleading requirement that the pleading advise the adversary of what issues the adversary must meet. See *Bashus v. Turner*, 218 Neb. 17, 352 N.W.2d 161 (1984). For example, the defendants could not prepare to defend upon the basis that a particular individual was not employed at E.S.U. when a particular plaintiff was allegedly abused without knowing when the plaintiff was allegedly abused, and by whom.

The plaintiffs advance two arguments why they should not be required to make their petitions any more definite and certain than they already have. First, they argue that their petitions are definite and certain enough to allow the defendants to answer and defend the matter. In support of this, the plaintiffs rely heavily on federal cases applying Fed. R. Civ. P. 12(e) and its progeny. As previously noted, Nebraska has rejected the liberal pleading requirements of notice pleading. The plaintiffs' first argument on the point is without merit.

Second, the plaintiffs argue that the facts sought by the defendants are matters within the knowledge of the defendants

themselves or are available to the defendants through the discovery process. This court has long held that facts which are, or which the law presumes to be, peculiarly within the knowledge of the opposing party may be alleged with less certainty and particularity than would otherwise be necessary, or may be alleged on information and belief, or may even be omitted entirely. *Graham v. Graham*, 135 Neb. 761, 284 N.W.2d 280 (1939). The plaintiffs' second argument ignores the fact that the discovery process is available to the plaintiffs as well as to the defendants. Although Nebraska has declined to adopt the FRCP, the Nebraska discovery rules for civil cases are, with some modification, based on the federal rules of discovery. See, Nebraska Ct. R. of Discovery, Comment on Civil Discovery Rules (rev. 1992); *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987).

Under the FRCP and comparable state practice, the scope of discovery is extremely broad. See Jack H. Friedenthal, Mary Kay Kane & Arthur P. Miller, Civil Procedure § 7.2 (1985). Neb. Ct. R. of Discovery 26(b)(1) (rev. 1992), which defines the general scope of discovery for civil cases in Nebraska, states:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Consistent with this broad approach to discovery, Neb. Ct. R. of Discovery 27 (rev. 1992) permits a party to perpetuate testimony by taking depositions before an action has even begun. Other Supreme Court rules govern discovery after commencement of the action. See, Neb. Ct. R. of Discovery 30 (rev. 1992) (permitting oral deposition of any person after 30 days from service of summons, and sooner with leave of court);

Neb. Ct. R. of Discovery 31 (rev. 1992) (permitting written depositions); Neb. Ct. R. of Discovery 33 (rev. 1992) .(permitting written interrogatories).

"A purpose of the discovery process is exploration of all available and properly discoverable information to narrow the fact issues in controversy so that a trial may be an efficient and economical resolution of a dispute." *Norquay v. Union Pacific Railroad*, 225 Neb. at 536, 407 N.W.2d at 153, citing *Tabatchnick v. G. D. Searle & Company*, 67 F.R.D. 49 (D.N.J. 1975). This is consistent with the general purpose of pleading in Nebraska discussed above, that is, to "frame the issues upon which a cause is to be tried . . . ." *Bashus v. Turner*, 218 Neb. at 21, 352 N.W.2d at 165.

Nonetheless, even though a period of approximately 20 months elapsed from the time the plaintiffs filed their lawsuits in April 1989 until their petitions were dismissed by the district court in December 1990, and even though the plaintiffs had been repeatedly ordered by the court to make their petitions more definite and certain, the records before us reflect that only minimal discovery was attempted by the plaintiffs. In October 1989, the court granted the plaintiffs' counsel permission to inspect, review, and copy the personnel files of all employees, past and present, of E.S.U. Nowhere in the records is there any indication that the defendants or the district court have attempted to hamper any discovery efforts by the plaintiffs. Nor is there any indication in the record that the plaintiffs could not obtain by written interrogatories or by requests for admissions sufficient facts to properly plead their cases. The records before us fail to show why the plaintiffs should be permitted to shift the burden of discovery to the defendants and thus avoid their own duty to plead ultimate facts. Nor do the records show that the defendants are possessed of any more facts concerning the plaintiffs' allegations than are the plaintiffs.

## 42 U.S.C. § 1983 ACTION

In the second "division" of each petition, each plaintiff has alleged a violation of his or her constitutional rights, including but not limited to rights secured by the 4th, 5th, 8th, 9th, and

14th Amendments to the U.S. Constitution. Incorporating by reference the language of the first "division," each plaintiff alleges a violation of 42 U.S.C. § 1983 in that the actions and conduct of E.S.U.'s employees were done within the scope of their employment, the defendants were acting under color of state law, and the actions and conduct of the E.S.U. employees proximately caused the plaintiff to suffer injury, disability, and impairment of earning capacity. Each plaintiff requested attorney fees pursuant to 42 U.S.C. § 1988 (1988).

Unfortunately, the plaintiffs' § 1983 claims suffer from the same deficiencies under code pleading as do their negligence claims. At least some of the federal courts have held that although notice pleading is generally sufficient, a § 1983 plaintiff is subject to heightened pleading requirements and must state in factual detail and with particularity the basis of the claim. See, *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976); *Streetman v. Jordan*, 918 F.2d 555 (5th Cir. 1990); *Cohen v. Illinois Institute of Technology*, 581 F.2d 658 (7th Cir. 1978), *cert. denied* 439 U.S. 1135, 99 S. Ct. 1058, 59 L. Ed. 2d 97 (1979); *Breece v. Swenson*, 332 F. Supp. 837 (W.D. Mo. 1971); *MacMurray v. Bd. of Trustees of Bloomsburg S. C.*, 428 F. Supp. 1171 (M.D. Pa. 1977).

The purpose of the specific pleading requirement in civil rights actions is to enable the court to weigh the substantiality of the claim and to identify and dismiss frivolous suits. See, *Boykins v. Ambridge Area School Dist.*, 621 F.2d 75 (3d Cir. 1980); *MacMurray v. Bd. of Trustees of Bloomsburg S. C., supra*. Broad, conclusory allegations and bald assertions do not meet the heightened pleading requirements of a § 1983 claim. See, *Rotolo v. Borough of Charleroi, supra*; *Streetman v. Jordan, supra*; *Hall v. Pennsylvania State Police*, 570 F.2d 86 (3d Cir. 1978).

In *Hall*, the U.S. Court of Appeals for the Third Circuit held that the plaintiff's amended complaint was sufficiently specific because the plaintiff had alleged "the conduct violating his rights (racially discriminatory activity), time (March 17, 1976), place (King of Prussia) and those responsible (various state and bank officials)." 570 F.2d at 89. Similarly, in *Boykins* the Third Circuit held that the plaintiff had pleaded with specificity

because her complaint had alleged "the conduct, expulsion from the drill team, the improper racial motive, the times and places of the activity complained of, and the persons responsible . . . ." 621 F.2d at 80.

In the present cases, the plaintiffs pled that the times they were allegedly abused included virtually the entire time each plaintiff attended the E.S.U school. The plaintiffs were unable to plead the identities of their abusers beyond the allegation that one or more of several individuals performed the abusive acts. Such pleading does not meet the heightened specificity requirements of § 1983, as demanded by the aforementioned federal courts. The plaintiffs' § 1983 pleadings are insufficient to allow a court of this state to weigh the substantiality of the claims, nor do they comply with this state's code pleading requirements.

## CONCLUSION

The plaintiffs elected to stand on their pleadings. Courts have the inherent power to dismiss an action for disobedience of a court order. *Bert Cattle Co. v. Warren*, 238 Neb. 638, 471 N.W.2d 764 (1991). The plaintiffs set forth their allegations of negligent hiring and retention of employees by E.S.U. and the violation of the plaintiffs' civil rights under § 1983 in uncertain and indefinite terms. The plaintiffs' petitions do not comply with Nebraska's rules of pleading.

Underlying the court's dismissal of the plaintiffs' petitions without prejudice was the plaintiffs' failure to comply with the order of the court to make their petitions more definite and certain. The trial court gave the plaintiffs every opportunity to properly plead their cases. Ultimately, the plaintiffs refused to further plead as ordered by the court.

In view of the records in these cases, it cannot be said that the trial court abused its discretion in dismissing the plaintiffs' petitions. Therefore, the orders of the district court dismissing the plaintiffs' petitions are affirmed.

AFFIRMED.

SHANAHAN, J., concurring.

These appeals involve an examination of the district court's judgments to determine whether the trial court abused its

discretion in dismissing the actions without prejudice.

> [A] judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.

*State v. Juhl*, 234 Neb. 33, 43, 449 N.W.2d 202, 209 (1989). Accord, *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992); *In re Interest of L. V.*, 240 Neb. 404, 482 N.W.2d 250 (1992); *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986).

Neb. Rev. Stat. § 13-919(5) (Reissue 1991) of the Political Subdivisions Tort Claims Act acknowledges that Neb. Rev. Stat. § 25-213 (Reissue 1989) applies to tort claims brought under the act, and § 13-919(1) specifies that an action under the act must be commenced within 2 years after the cause of action has accrued. Section 25-213 states:

> [I]f a person entitled to bring any action mentioned in this chapter [or] the Political Subdivisions Tort Claims Act . . . is, at the time the cause of action accrued, within the age of twenty years, a person with a mental disorder, or imprisoned, every such person shall be entitled to bring such action within the respective times limited by this chapter after such disability is removed.

The Christianson petition alleges that the plaintiff, Kelly, "is an incompetent person" within § 25-213. With the exception of Heather Duncan, all other plaintiffs in the several actions are alleged to be within the age of 20 years when their causes of action accrued. Heather Duncan became 21 years old on October 21, 1992. Consequently, the statute of limitations otherwise applicable to commencement of an action under the Political Subdivisions Tort Claims Act is suspended in accordance with § 25-213, so that each plaintiff in these actions is entitled to commence an action against Educational Service Unit No. 16 by refiling an action during the plaintiff's legal disability or within a period of 2 years after the disability has been removed. For that reason, each of the plaintiffs in the present cases may immediately refile an action against the educational service unit inasmuch as dismissal has been without

prejudice. Because each of the plaintiffs in the present appeals may refile an action and achieve his or her day in court on the merits of their respective claims, dismissal has not deprived any plaintiff of a substantial right; hence, an abuse of discretion has not occurred as the result of the dismissal.

The majority's opinion concerning the differences between code pleading and the Federal Rules of Civil Procedure, while interesting reading, is extraneous to the only issue in these appeals, that is, whether the district court abused its discretion in dismissing the cases without prejudice. In light of § 25-213 in relation to the Political Subdivisions Tort Claims Act and in view of the absence of an abuse of discretion by the district court, I concur that the district court's judgments of dismissal should be affirmed.